COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-08-153-CV

 

 

IN THE
INTEREST OF R.L.A. AND 

E.A.O., CHILDREN

 

                                              ------------

 

             FROM THE 235TH
 DISTRICT COURT OF COOKE
COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                           I.
Introduction

In one issue, Appellant Charolette A. (AMother@)
complains that the trial court erred when it denied her motion to strike a
petition in intervention.  We affirm.








                              II.
Factual and Procedural History

At age fourteen, R.L.A. made an outcry of sexual
abuse by her stepfather, E.A.O.=s
biological father.[2]  R.L.A.=s outcry
triggered the children=s removal and placement into
foster care by the Department of Family and Protective Services (ADepartment@), which
filed a suit for conservatorship and termination of parental rights in
September 2006.[3]








On February 11, 2008, E.A.O.=s foster
parents (the AFoster Parents@)[4]
filed a petition in intervention, seeking to terminate Mother=s
parental rights to E.A.O.  Two days
later, E.A.O.=s attorney ad litem also filed a
petition to terminate Mother=s
parental rights to E.A.O., on the same grounds presented by the Foster
Parents.  On February 29, Mother filed a
motion to strike the Foster Parents= petition,
complaining that their petition was not timely filed, that she lacked
sufficient time to propound discovery, that the intervention would complicate
the case by an excessive multiplication of issues, and that intervention was
not essential to protect their interests.

The trial court denied Mother=s motion
after a hearing on March 5, stating,

Since we=re going to hear the
terminationCthe issue of termination
anyway on March 17th, the CourtCI=m going to allow the petition to intervene.  I am, however, going to order very expedited
discovery.  I will give the parties until
. . . Tuesday.  And then [Foster Parents]
. . . will have three days to respond. 
All responses due by the 14th.

 

On March 12, the Department dropped termination from its petition.

At trial, the jury found that Mother=s
parental rights to E.A.O. should be terminated and that the Foster Parents
should be named her permanent managing conservators.  The jury found that permanent managing
conservatorship of R.L.A. should be awarded to the Department and that Mother and
R.L.A.=s
biological father should be named R.L.A.=s
permanent possessory conservators.  The
trial court entered judgment on the jury=s verdict.

                                           III.
Discussion

In Mother=s sole
issue, she complains that the trial court erred by denying her motion to strike
the Foster Parents= petition in intervention.








A. Standard of Review

AAny party may intervene by
filing a pleading, subject to being stricken out by the court for sufficient
cause on the motion of any party.@  Tex. R. Civ. P. 60.  We review a trial court=s denial
of a motion to strike intervention for an abuse of discretion.  In re N.L.G., 238 S.W.3d 828, 829
(Tex. App.CFort Worth 2007, no pet.).  A trial court abuses its discretion if it
acts without reference to any guiding rules or principles.  See id. at 829B30
(citing Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 240B42 (Tex.
1985), cert. denied, 476 U.S. 1159 (1986)).








When the trial court strikes a petition in
intervention, an abuse of discretion occurs if (1) the intervenors could have
brought the same action, or any part thereof, in their own names; (2) the
intervention will not complicate the case by an excessive multiplication of the
issues; and (3) the intervention is almost essential to effectively protect the
intervenors= interest, which may be legal or
equitable.  Guar. Fed. Sav. Bank v.
Horseshoe Operating Co., 793 S.W.2d 652, 657 (Tex. 1990).  The flip-side of this rule is that a trial
court abuses its discretion if it grants a petition in intervention when
(1) the intervenors could not have brought the same action, or any part
thereof, in their own names; (2) the intervention would complicate the
case by an excessive multiplication of issues; and (3) the intervention is not
almost essential to effectively protect the intervenors=
interest.  See id.

B. Analysis

Mother does not contest that the Foster Parents
met the first portion of the test stated above.[5]  Instead, she complains, as she did to the
trial court, that the Foster Parents=
petition should have been denied because their petition complicated the case by
multiplying the issues, was not essential to protect their interests, and was
not timely filed.[6]

1. Multiplication of Issues








Mother argues that when the Foster Parents filed
their petition, the Department Ahad
already effectively abandoned any attempt to terminate@ her
parental rights, and therefore, the Foster Parents=
intervention Aimmediately multiplied the
issues@ before
the court and confused the issues by adding the termination issue, the issue of
the Foster Parents= appointment as conservators,
and the implied issue of adoption.

However, E.A.O.=s
attorney ad litem filed a petition to terminate Mother=s
parental rights two days after the Foster Parents filed their petition to
intervene, requesting that the Foster Parents be appointed E.A.O.=s
managing conservators and seeking termination on the same grounds presented by
the Foster Parents.[7]  Therefore, these issues would have had to be
addressed at trial regardless of the Foster Parents=
intervention.








In addition to the termination grounds, the
Foster Parents requested adoption.  They
argue that testimony about their proposed adoption of E.A.O. could not have
confused the issues at trial, that such testimony pertained to E.A.O.=s best
interest, and that, A[i]f anything, it provided
clarification and answered the unspoken question the jurors surely had: >What
will happen to this child in the long run if we choose this placement?=@  We agree, as prompt and permanent placement
of the child in a safe environment is presumed to be in the child=s best
interestCone of
the issues put before the jury by E.A.O.=s
attorney ad litem and by the Foster ParentsCand some
of the non-exclusive factors the factfinder may consider in determining best
interest include the plans for the child by the individuals seeking custody and
the stability of the home or proposed placement.[8]  See Tex. Fam. Code Ann. '
263.307(a) (Vernon 2008); Holley v. Adams, 544 S.W.2d 367, 371B72 (Tex.
1976).

We conclude that because there was no excessive
multiplication of issues, the trial court did not abuse its discretion by
allowing the Foster Parents to intervene, and we overrule this portion of
Mother=s sole
issue.

2. Protection of Intervenors=
Interests

Mother also asserts that the intervention was not
essential to protect the Foster Parents=
interests and that the intervention was redundant, because shortly after their
petition in intervention was filed, E.A.O.=s
attorney ad litem filed his own petition for termination of Mother=s
parental rights and sought to place E.A.O. permanently with the Foster Parents.








The Foster Parents respond that when they filed
their petition in intervention, no other party, including E.A.O.=s
attorney ad litem, had requested termination of Mother=s
parental rights to E.A.O.[9]  Cf. In re D.K., 148 S.W.3d 692, 695
(Tex. App.CBeaumont 2004, no pet.)
(concluding that trial court did not abuse its discretion by granting motion to
strike petition in intervention because Department had already petitioned for
termination of parental rights so intervention was not necessary to protect
foster parents= interests).  They argue that if they had not been allowed
to intervene, they would not have been permitted to participate in any pretrial
settlement discussions, to call their own supporting witnesses, or to fully
inform the jury of their future intention to provide permanency to E.A.O. if
they were awarded conservatorship.








At the time of the hearing, the trial court could
not have known how the Foster Parents=
interests and E.A.O.=s interests as expressed by her
attorney ad litem would align at trial or whether the Foster Parents would
otherwise be able to protect their interests in seeking managing
conservatorship of E.A.O. if they were not allowed to participate.[10]  Therefore, we cannot say that the trial court
abused its discretion by allowing the Foster Parents to intervene, and we
overrule this portion of Mother=s sole
issue.

3. Timeliness

Finally, Mother contends that the filing of the
petition for intervention was untimely and harmed her because she had an
insufficient time to investigate the Foster Parents=
witnessesCthe case was filed on September
19, 2006, and the final dismissal date was March 22, 2008.  She complains that although the Foster
Parents had legal standing in October 2007, they waited an additional four
months to file their petition, and that the trial court gave the parties only
six days to propound discovery and an additional three days to respond.








The Foster Parents respond, as they did at the
hearing on Mother=s motion to strike, that they Atook
action and filed their intervention as soon as they realized the Department
fully intended to remove E.A.O. and place her with R.L.A. in a questionable
relative placement in Alabama.@  They argue that the trial court had the
discretion to order an expedited discovery period as a less restrictive
alternative to striking them from the suit and that Mother was not harmed
because discovery was propounded by Mother and answered in full prior to the
trial date.  E.A.O.=s
attorney ad litem, who also filed a brief in this appeal, adds (as he did at
the hearing on the motion to strike) that at the time of the intervention,
Mother=s
attorney had not propounded any discovery, and that the sole example cited by
Mother as the harmful result of expedited discovery, the use of E.A.O.=s
teacher as a witness, does not show any harm.[11]

Even though the Foster Parents could have
intervened earlier than they did, the trial court had the discretion to
determine whether to allow them to intervene and whether to impose an expedited
discovery period.  And, under the
circumstances presented to it at the hearing, we cannot say that the trial
court abused its discretion by deciding to deny Mother=s motion
to strike and to allow the Foster Parents to remain in the suit.  Therefore, we overrule this final portion of
Mother=s sole
issue.

                                          IV.
Conclusion

Having overruled Mother=s sole
issue on appeal, we affirm the trial court=s
judgment.[12]








PER
CURIAM

 

PANEL: MCCOY, DAUPHINOT, and GARDNER, JJ.

DELIVERED: April 2, 2009











[1]See Tex. R. App. P. 47.4.





[2]E.A.O.=s father=s parental rights were
terminated by the trial court in June 2007, after he filed an affidavit for
voluntary relinquishment.





[3]Mother has four children,
but only R.L.A. and E.A.O. were the subjects of the March 2008 trial.  Mother=s other two children were born during the
pendency of the March 2008 trial.  R.L.A.
was fourteen years old and E.A.O. was six years old when the Department filed
its petition.





[4]Although R.L.A. and
E.A.O. had initially been placed with the same foster parents, because of
R.L.A.=s psychological issues,
including demonstrating sexual inappropriateness with younger children and
being committed twice to a psychiatric facility because of suicidal threats,
E.A.O.=s foster parents
requested that R.L.A. be removed from their home.





[5]Mother instead complains
that the Foster Parents could have and should have brought a case in their own
names, as they would have had physical possession of E.A.O. for the twelve
months required for standing by October 2007. 
See N.L.G., 238 S.W.3d at 831 (holding no abuse of discretion
when trial court allowed foster parents to intervene because they had
standing).





[6]Mother also now complains
that there was no evidence presented at the hearing to support the
petition.  However, as here, the parties
did not dispute the Foster Parents= standing at the hearing, the trial court
acknowledged that the attorney ad litem had filed a petition to terminate Mother=s parental rights to
E.A.O., and the Foster Parents= attorney attempted to explain to the trial court
why the Foster Parents waited until February 2008 to file their petitionCall information upon
which the trial court could base its decision on the issues presented here.





[7]That is, endangerment, abandonment,
failure to comply with court-ordered provisions for the child=s return to the parent,
constructive abandonment, and the child=s best interest.





[8]Additionally, the jury
and trial court were not required to decide the issue of adoption at the trial.





[9]Although the Department
had listed grounds for termination of parental rights in its original petition,
at the hearing on Mother=s motion to strike, the
Department=s counsel stated to the
trial court that Aat no time had the
Department changed the principal goal to termination,@ and the Department
dropped termination from its petition before trial.





[10]Although the Foster
Parents and E.A.O.=s attorney ad litem
acknowledged at trial that their interests were aligned, E.A.O.=s attorney ad litem
called only Mother and the children=s court-appointed special advocate as witnesses
in his case-in-chief.  In the Foster
Parents= case-in-chief, both
foster parents testified, and they called E.A.O.=s first grade teacher and
E.A.O.=s counselor as
witnesses.  Without the Foster Parents= intervention, we cannot
say that either or both foster parents would have been invited to testify or
that E.A.O.=s teacher or counselor
would have been called to provide context to the jury about E.A.O.=s educational and
emotional progress.





[11]E.A.O.=s teacher testified that
when E.A.O. first joined her class, she had a hard time interacting with other
children and adults and was academically at a beginning kindergarten levelCit was revealed by
another witness that prior to E.A.O.=s removal, her biological father had
home-schooled her.  Because of E.A.O.=s low academic level, she
had to repeat first grade.  E.A.O.=s teacher testified that
all she knew of E.A.O.=s history was that she
came from Alabama and that the Foster Parents were E.A.O.=s foster parents, but
that she did not know why E.A.O. was in the care of Child Protective Services
or know all of the facts or issues in the case. 
She testified that her understanding of the case was that the Foster
Parents were trying to gain custody of E.A.O., and that she had been told that
by her principal and by the attorneys.





[12]During the pendency of
this appeal, the Department filed an agreed motion for disposition regarding
R.L.A. with this court, requesting that we affirm the portion of the judgment
appointing it R.L.A.=s permanent managing
conservator and appointing Mother R.L.A.=s permanent possessory conservator because A[n]o controversy or dispute
exists in this appeal between [Mother] and the Department regarding the
Department=s appointment of
permanent managing conservator of R.L.A.@  Having
affirmed the trial court=s judgment in its
entirety, we need not address this motion further.